UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JAMES STEWART, *et al.*,

    Plaintiffs,

v.

GOGO, INC.,

    Defendant.

No. C-12-5164 EMC

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

**(Docket No. 25)**

Plaintiffs James Stewart, Joel Milne, and Joseph Strazullo have filed a class action against Defendant Gogo, Inc., asserting that it has violated, *inter alia*, federal antitrust law because it has an unlawful monopoly in the "United States market for inflight internet connectivity on domestic commercial aircraft." FAC ¶ 1; *see also* FAC ¶ 12. Currently pending before the Court is Gogo's motion to dismiss. Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby **GRANTS** the motion to dismiss, but without prejudice.

## I.   FACTUAL & PROCEDURAL BACKGROUND

In their FAC, Plaintiffs allege as follows.

Gogo, formerly known as Aircell, is a company that provides inflight Internet access on commercial aircraft. *See* FAC ¶¶ 11, 14. Gogo provides this access through an

> Air-to-Ground ("ATG") network, which is comprised of nationwide cellular towers. Instead of being designed to transmit signals from land-based tower to land-based tower or to land-based cellular telephones or computers, however, the ATG towers are designed to beam their transmissions in a general vertical direction so that they can

>
> communicate with a commercial aircraft in the sky that is equipped with a corresponding ATG antenna and communications unit within the plan.

FAC ¶ 14.

Currently, Gogo provides "internet access connectivity to nine out of the ten domestic U.S. airlines." FAC ¶ 14. Furthermore, it is the "*exclusive* internet access connectivity provider along domestic airlines routes flown by AirTran, Alaska Airlines, American Airlines, Delta, Frontier Airlines, United Airlines, US Airways, and Virgin America." FAC ¶ 11 (emphasis added). Gogo uses a long-term contract (usually ten years) that "legally prevent[s] contracting airline carriers from employing any inflight internet connectivity provider, other than Gogo, during the ten-year duration of [the] contract." FAC ¶ 22.

Although the above allegations suggest that Gogo's exclusive contracts with the airlines effectively operated as a wholesale bar preventing the contracting airline from using an internet access provider other than Gogo on *any* of its planes, Plaintiffs clarified at the hearing that this was not in fact the case. Rather, it appears that the contract binds an airline on an aircraft-by-aircraft basis. In other words, where an airline agreed to have an airplane equipped with Gogo for internet access, *that* airplane would use only Gogo's services (and no other company's) for the ten years. Thus, conceivably, an airline could have some of its airplanes equipped for Gogo's services but use a different internet access provider for its other planes.

Focusing on the North American aircraft that are actually equipped to provide internet connectivity to passengers, Plaintiffs allege that 85% are equipped by Gogo. *See* FAC ¶¶ 11, 20. Furthermore, "[a]pproximately 95% of Gogo-equipped planes . . . are contracted under [the] ten-year exclusive agreements." FAC ¶ 11.

According to Plaintiffs, the competition in the relevant market – *i.e.*, "the United States market for inflight internet access services on domestic commercial airlines flights," FAC ¶ 12, – is limited, not only because of Gogo's exclusive dealing arrangements but also because of other high barriers to entry – *e.g.*, "the high cost of infrastructure required to build a network capable of offering inflight internet connectivity" and "restrictive legal and regulatory hurdles." FAC ¶ 22. There are only two competitors identified in Plaintiffs' complaint – Row 44 and ViaSat, each of

which provide internet access through a satellite-based platform rather than through cellular towers.[1] *See* FAC ¶¶ 15-16, 18. Row 44 currently provides access on flights operated by Southwest Airlines. *See* FAC ¶ 17. ViaSat has an agreement with JetBlue, and service on JetBlue flights is expected to begin in early 2013. *See* FAC ¶ 18. While Row 44 charges only $5 for use of its service – regardless of the length of a flight – Gogo charges on average $12.95 for a flight of at least three hours' duration. *See* FAC ¶ 17. For some flights, Gogo has a price as high as $17.95. *See* FAC ¶¶ 17, 26. When Gogo launched its services just a few years earlier, its pricing was as low as $7.95 or $9.95. *See* FAC ¶ 26. According to Plaintiffs, "[i]n the face of [*e.g.*, Row 44's] more advanced and lower-priced competitive offerings, had Gogo not been shielded by the long-term exclusive contracts it employed, it would not be able to maintain or increase its market share, while continuing to charge supra-competitive prices, as it has done." FAC ¶ 31.

Based on, *inter alia*, the above allegations, Plaintiffs have asserted the following claims:

(1)   Violation of § 1 of the Sherman Act, 15 U.S.C. § 1 – unlawful agreement in restraint of trade.

(2)   Violation of § 2 of the Sherman Act, 15 U.S.C. § 2 – unlawful acquisition of monopoly market power.

(3)   Violation of § 2 of the Sherman Act, 15 U.S.C. § 2 – unlawful maintenance of monopoly market power.

(4)   Violation of the California Cartwright Act, Cal. Bus. & Prof. Code § 16720 – unlawful agreement in restraint of trade.

(5)   Violation of California Business & Professions Code § 17200 – unlawful and unfair business practice.

///

///

///

---

[1] A satellite-based platform has advantages in that it "allows airlines to offer uninterrupted broadband service across national boundaries, over oceans, and even in more remote regions of the world. By contrast, Gogo's service, being dependent on land-based cellular towers is limited in its coverage to the region where Gogo has land-based towers installed." FAC ¶ 16.

## II. DISCUSSION

A. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss based on the failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). A motion to dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims alleged. *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). In considering such a motion, a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party, although "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than sheer possibility that a defendant acted unlawfully." *Iqbal*, 129 S. Ct. at 1949.

B. Gogo's Request for Judicial Notice

As a preliminary matter, the Court takes note that Gogo has asked the Court to take judicial notice of the fact that there is another competitor beyond those identified in the FAC. In the FAC, Plaintiffs mention Row 44 (making offerings through Southwest) and ViaSat (to be making offerings through JetBlue). Gogo asks the Court to take judicial notice of the fact that Panasonic is another competitor and that Panasonic recently entered into a deal with United under which United would be using Panasonic's satellite-based service. This information comes from a United press release. See Mot. at 4; Abye Decl., Ex. C (United press release, dated January 15, 2013) (stating, *inter alia*, that "United has outfitted [Panasonic's] Ku-band satellite Wi-Fi in two Airbus 319 aircraft serving domestic routes" and that "[t]he company expects to complete installation of satellite-based Wi-Fi on 300 mainline aircraft by the end of this year").

While Gogo is correct that courts have taken judicial notice of press releases, there are limits to that judicial notice. That is, while a court may consider a press release "for its existence and contents," it may not do so "for the truth of any matters contained therein." *In re American Apparel, Inc. S'holder Litig.*, No. CV 10-06352 MMM (JCGx), 2013 U.S. Dist. LEXIS 6977, at *39 (C.D. Cal. Jan. 16, 2013); *see also Mallen v. Alphatec Holdings, Inc.*, 861 F. Supp. 2d 1111, 1122 n.5 (S.D. Cal. 2012) (taking judicial notice of, *inter alia*, press releases but adding that, "[w]here inappropriate, the Court will not consider these documents for the truth of the matters asserted therein"); *In re Rackable Sys., Inc. Secs. Litig.*, No. C 09-0222 CW, 2010 U.S. Dist. LEXIS 88927, at *10 (N.D. Cal. Aug. 27, 2010) (taking judicial notice of, *e.g.*, press releases "but not for the truth of their contents"). Accordingly, the press release is of limited value to Gogo. However, even if the Court were to consider the press release for the truth of the contents contained therein (particularly because it is consistent with an SEC filing made by Gogo that *is* judicially noticeable because it is incorporated by reference into the complaint, *see* Abye Decl., Ex. B (SEC Form S-1 Reg. St. at 98) (noting that "[t]hree major U.S. airlines, United Airlines, Southwest Airlines and JetBlue Airways, have announced arrangements with competitors to provide connectivity on all or a significant portion of their fleets")), the analysis below would not differ.

C. <u>Sherman Act Claims (§§ 1 and 2)</u>

Section 1 of the Sherman Act makes illegal "[e]very contract, combination . . ., or conspiracy, in restraint of [interstate or foreign] trade or commerce." 15 U.S.C. § 1. Section 2 of the Sherman Act makes it unlawful to monopolize, attempt to monopolize, or combine or conspire to monopolize any part of the nation's interstate or foreign commerce. *See* 15 U.S.C. § 2. For both §§ 1 and 2, a court must evaluate whether competition is being illegally restrained in a specific market. *See, e.g.*, *Cascades Computer Innovation LLC v. RPX Corp.*, No. 12-CV-01143 YGR, 2013 U.S. Dist. LEXIS 10526, at *31-32 (N.D. Cal. Jan. 24, 2013).

In its motion, Gogo argues that Plaintiffs' Sherman Act claims are deficient because they are predicated on Gogo's alleged exclusive dealing arrangements with airlines but an exclusive dealing arrangement is not per se illegal; there is only a problem with an arrangement where "its effect is to 'foreclose competition in a substantial share of the line of commerce affected.'" *Allied Orthopedic*

1 *Appliances Inc. v. Tyco Health Care Group LP*, 592 F.3d 991, 996 (9th Cir. 2010). According to
2 Gogo, Plaintiffs have failed to adequately allege that competition has been foreclosed in a
3 substantial part of the market for primarily two reasons: (1) because the relevant market, properly
4 construed, cover not just the North American aircraft that *actually* provide internet access but also
5 the North American aircraft that *could* be equipped to provide such access, in which case Gogo has
6 only a 16% market share (and not 85% or higher as alleged by Plaintiffs who focus only on the
7 North American aircraft that are actually equipped) and (2) because the alleged exclusive contracts
8 include a provision that allows the airlines "to terminate their dealings with Gogo whenever a rival
9 offers a superior service or business arrangement." Mot. at 5.

   1. <u>Relevant Market</u>

  Plaintiffs define the relevant market as "the United States market for inflight internet access services on domestic commercial airline flights." FAC ¶ 12. In its motion, Gogo does not necessarily dispute that market definition,[2] *cf. Newcal Indus. v. Ikon Office Soln.*, 513 F.3d 1038, 1045 (9th Cir. 2008) (noting that the validity of a relevant market is typically a factual and not a legal element), but argues that this means that the Court should consider all airplanes that could be equipped with internet access and not just those airplanes that are actually equipped.

  In defining the relevant market, a court must look at the "full range of selling opportunities reasonably open to [competitors], namely all the product and geographic sales they may readily compete for." *Omega Envtl. v. Gilbarco, Inc.*, 127 F.3d 1157, 1162 (9th Cir. 1997) (internal quotation marks omitted). In the instant case, the selling opportunity is to the airlines, who then "distribute" the service to passengers on the planes. While Plaintiffs claim that the Court should consider only those airplanes that the airlines have actually equipped with internet access, they have not made any allegations as to why airplanes that *could* be equipped should not be included in the full range of selling opportunities reasonably open to a competitor. Plaintiffs do not allege, for example, that there are substantial technological or design barriers to installing a competitor's

---

[2] In its reply brief, Gogo does make a new argument in which it disputes the market definition – more specifically, its geographic component. *See* Reply at 6 n.4. The Court does not entertain this argument because it was not raised in the opening brief.

6

internet connectivity services on such planes, nor do they allege that there are substantial financial barriers which prevent competition for these planes. In the absence of such allegations, the Court agrees with Gogo that Plaintiffs cannot focus solely on planes that are actually equipped with internet access, and, as a result, Plaintiffs' allegation that Gogo dominates the market with respect to North American aircraft that are actually equipped to provide internet connectivity to passengers (85%) shows little.[3] *See* FAC ¶¶ 11, 20. Thus, Plaintiffs have failed to allege that, as a result of the exclusive dealing arrangements made by Gogo, there has been substantial foreclosure of competition in the relevant market, and, accordingly, the Court dismisses Plaintiffs' Sherman Act claims.

2. Exclusive Contracts

Because Plaintiffs have failed to make adequate allegations as discussed above, the Court need not entertain Gogo's second argument – *i.e.*, that there is not substantial foreclosure because the alleged exclusive dealing arrangements are, in fact, easy to terminate. *See Omega*, 127 F.3d at 1163 (noting that "the short duration and easy terminability of these agreements negate substantially their potential to foreclose competition"). The Court notes, however, contrary to what Gogo claims, it does not appear that the contracts "allow the key airlines to terminate their dealings with Gogo whenever a rival offers a superior service or business arrangement." Mot. at 5. Rather, Gogo's SEC filing (which the Court may take judicial notice of because it is referenced in the complaint, *see* FAC ¶¶ 20, 27) notes as follows:

> [O]ur contracts with airline partners from which we derive a majority of our CA segment revenue permit each of these airline partners to terminate its contract with us if another company provides an alternate connectivity service that is a material improvement over Gogo Connectivity, *such that failing to adopt such service would likely cause competitive harm to the airline, or if the percentage of passengers using Gogo Connectivity on such airline's flights falls below certain negotiated thresholds.*

---

[3] At the hearing, Plaintiffs noted that a large market share was only one way to prove market power; another way to establish market power would be to provide evidence of restricted output and supracompetitive prices. *See Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1001 (9th Cir. 2010) (noting that, "[t]o establish circumstantial evidence of market power, a plaintiff must first define the relevant market and then show that the defendant plays enough of a role in the market to impair competition significantly" but that "[e]vidence of restricted output and supracompetitive prices is direct evidence of market power"). But the complaint, while it contains allegations pointing to supracompetitive prices, does not contain accompanying allegations of restricted output.

1 Abye Decl., Ex. B (SEC Form S-1 Reg. St. at 15) (emphasis added). Based on the above, an airline
2 cannot terminate simply because a competitor of Gogo offers a superior service or business
3 arrangement; rather, there is an additional condition that must be satisfied – *e.g.*, "failing to adopt
4 [the competitor's] service would likely cause competitive harm to the airline," and not, notably, the
5 passenger on the airplane.

6 D.     Cartwright Act Claim

7 Plaintiffs' claim under the Cartwright Act is predicated on the same conduct underlying the
8 Sherman Act claims. *See* FAC ¶ 67. Moreover, the legal analysis of Plaintiffs' Cartwright Act
9 claim under the Cartwright Act should mirror the analysis under the Sherman Act claims. *See*
10 *County of Tuolumne v. Sonora Community Hosp.*, 236 F.3d 1148, 1160 (9th Cir. 2011) (noting that
11 "[t]he analysis under California's antitrust laws mirrors the analysis under federal law because the
12 Cartwright Act was modeled after the Sherman Act"); *Dimidowich v. Bell & Howell*, 803 F.2d 1473,
13 1476-77 (9th Cir. 1986) (noting that "[t]he antitrust provisions of the Cartwright Act were patterned
14 after section 1 of the Sherman Act" and "California courts have held that federal cases interpreting
15 the Sherman Act are persuasive authority under the Cartwright Act"). Accordingly, the Court
16 concludes that the Cartwright Act claim, like the Sherman Act claims, must be dismissed because
17 Plaintiffs have failed to make allegations as to why planes that could be equipped with internet
18 access should not be considered part of the full range of selling opportunities reasonably open to
19 competitors. In short, there is no allegation of substantial foreclosure of competition in the relevant
20 market.

21 E.     Section 17200 Claim

22 Because the Court is dismissing both the Sherman Act and Cartwright Act claims, Plaintiffs'
23 assertion that Gogo acted unlawfully in violation of § 17200 must also fail. *See* FAC ¶ 73 (asserting
24 an unlawful business practice based on a violation of the Sherman and Cartwright Acts). Similarly,
25 there is no basis to assert an unfair business practice in violation of § 17200. *See* FAC ¶ 74.
26 ///
27 ///
28 ///

### III. CONCLUSION

For the foregoing reasons, the Court grants Gogo's motion to dismiss, but without prejudice.[4] Plaintiffs have leave to file an amended complaint within thirty (30) days of the date of this order to address the deficiencies identified above.

This order disposes of Docket No. 25.

IT IS SO ORDERED.

Dated: April 10, 2013

_____
EDWARD M. CHEN
United States District Judge

---

[4] Because the Court is dismissing for the above-stated reasons, it need not at this juncture address Gogo's contention that there are insufficient allegations of standing or antitrust injury.