| | |
|---|---|
| 1 | James Donato (SBN 146140) |
|   | Mikael A. Abye (SBN 233458) |
| 2 | Shearman & Sterling LLP |
|   | Four Embarcadero Center, Suite 3800 |
| 3 | San Francisco, CA  94111-5994 |
|   | Telephone:     (415) 616-1100 |
| 4 | Facsimile:      (415) 616-1199 |
|   | Email: jdonato@shearman.com |
| 5 |           mabye@shearman.com |
| 6 | Attorneys for Defendant GOGO INC. |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JAMES STEWART, JOEL MILNE and JOSEPH STRAZULLO, On Behalf of Themselves and All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> GOGO INC., <br><br> Defendant. | Case No. 12-cv-05164-EMC <br><br> **DEFENDANT GOGO INC.'S NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Date:            January 23, 2014 <br> Time:           1:30 p.m. <br> Courtroom:   5 <br> Judge:          Hon. Edward M. Chen <br><br> REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................................ ii

NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT ............................................................................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................................... 2

INTRODUCTION ................................................................................................................................ 2

BACKGROUND .................................................................................................................................. 3

    I.     Facts .................................................................................................................................. 3

    II.    Allegations and Procedural History ................................................................................. 5

ARGUMENT ........................................................................................................................................ 7

    I.     The Sherman Act Claims Should Be Dismissed for Failure to Allege Market Foreclosure ...................................................................................................................... 7

          A.     In Contravention of the Court's Guidance, the SAC Fails to Plead Facts Establishing Why Unequipped Aircraft Should Be Excluded from the Relevant Market ............................................................................... 8

          B.     The SAC Fails to Plead That Gogo Controls, Let Alone Foreclosed, the Required Substantial Portion of the Relevant Market ............................ 9

          C.     Gogo's Agreements Do Not Even Foreclose Competition in Its Legally Insignificant Portion of The Relevant Market .............................. 10

    II.    Plaintiffs' Cartwright Act Claim Should Be Dismissed ......................................... 13

    III.   Plaintiffs' UCL Claim Should Be Dismissed .......................................................... 14

CONCLUSION ................................................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**                          **Page(s)**

*Abbyy USA Software House, Inc. v. Nuance Commc'n Inc.*, No. C 08-01035 JSW,
    2008 WL 4830740 (N.D. Cal. Nov. 6, 2008) ........................................................................7, 8

*Albrecht v. Lund*, 845 F.2d 193 (9th Cir. 1988) ................................................................................14

*Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*, 592 F.3d 991
    (9th Cir. 2010) ..................................................................................................................8, 12

*Apple, Inc. v. Psystar Corp.*, 586 F. Supp. 2d 1190 (N.D. Cal. 2008) .......................................13, 14

*In re Apple iPod iTunes Antitrust Litig.*, 796 F. Supp. 2d 1137 (N.D. Cal. 2011) ...........................14

*Applestein v. Medivation, Inc.*, 861 F. Supp. 2d 1030 (N.D. Cal. 2012) .........................................14

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..............................................................................................7

*B & H Med., L.L.C. v. ABP Admin., Inc.*, 526 F.3d 257 (6th Cir. 2008) .........................................10

*Balaklaw v. Lovell*, 14 F. 3d 793 (2d Cir. 1994) .............................................................................12

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..............................................................................7

*Colonial Med. Grp., Inc. v. Catholic Healthcare W.*, No. C-09-2192 MMC, 2010
    WL 2108123 (N.D. Cal. May 25, 2010) ...............................................................................10

*Davis v. HSBC Bank*, 691 F.3d 1152, 1160 (9th Cir. 2012) ..............................................................3

*Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1478 (9th Cir. 1986) ..............................................13

*E & L Consulting, Ltd. v. Doman Indus. Ltd.*, 472 F.3d 23 (2d Cir. 2006) .......................................8

*Garon v. eBay, Inc.*, No. C 10-05737 JW, 2011 WL 6329089
    (N.D. Cal. Nov. 30, 2011) ....................................................................................................13

*Image Technical Servs, Inc. v. Eastman Kodak Co.*, 125 F.3d 1195 (9th Cir. 1997) ......................10

*Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 45 (1984) ............................................8, 10

*Kingray, Inc. v. NBA, Inc.*, 188 F. Supp. 2d 1177 (S.D. Cal. 2002) ..................................................8

*In re Late Fee & Over-Limit Litig.*, 528 F. Supp. 2d 953 (N.D. Cal. 2007) ....................................13

*MedioStream, Inc. v. Microsoft Corp.*,
    No. 869 F. Supp. 2d 1095 (N.D. Cal. 2012) ...........................................................................7

*Omega Environmental, Inc. v. Gilbarco, Inc.*, 127 F.3d 1157 (9th Cir. 1997) ..........................10, 12

*PNY Technologies, Inc. v. Sandisk Corp.*, No. C-11-4689 YGR, 2012 WL 1380271
 (N.D. Cal. April 20, 2012) ..............................................................................................10

*POURfect Prods.,* No. CV-09-2660, 2010 WL 1769413 (D. Ariz. May 3, 2010)............................10

*Salameh v. Tarsadia Hotel*, 726 F.3d 1124 (9th Cir. 2013)..........................................................9, 14

*Twin City Sportservice, Inc. v. Charles O. Finley & Co.*, 512 F.2d 1264
 (9th Cir. 1975)..................................................................................................................10

**Statutes**

Cal. Bus. & Prof. Code Section 16720, *et seq* ...............................................................................13

Cal. Bus. & Prof. Code Section 17200 *et seq*. ...............................................................................14

**NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Please take notice that on January 23, 2014, at 1:30 p.m. or as soon thereafter as this matter may be heard before the Honorable Edward M. Chen, United States District Judge, in the United States District Court for the Northern District of California, 450 Golden Gate Ave., San Francisco, CA, 94102, Defendant Gogo Inc. will and hereby does move this Court for an order dismissing with prejudice Plaintiffs' Second Amended Class Action Complaint ("SAC") filed August 30, 2013 (Dkt. No. 59) pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

This motion is based on this notice, the accompanying memorandum of points and authorities, the declaration of Mikael A. Abye ("Abye Decl."), the pleadings and papers on file in this action, and such other evidence and arguments as may be presented at the hearing on the motion.

**STATEMENT OF ISSUES TO BE DECIDED**

1.  Does the SAC fail to state a claim for which relief can be granted under the Sherman Act, the California Cartwright Act, or the California Unfair Competition Law (Bus. & Prof. Code Section 17200 *et seq*.)?

2.  Should the SAC be dismissed with prejudice because Plaintiffs have already amended their claims twice and the facts incorporated in the SAC make further amendment futile?

//
//
//
//
//
//
//
//

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

For the third time, Plaintiffs James Stewart, Joel Milne, and Joseph Strazzullo ("Plaintiffs") have failed to state a cognizable antitrust claim against defendant Gogo Inc. ("Gogo"). The SAC is substantively identical to the amended complaint this Court dismissed in its entirety on April 10, 2013. Once again, Plaintiffs try to bring a market foreclosure case on the legally unsound argument that foreclosure should be determined on the basis of a static sliver of the market actually supplied with Gogo's services, rather than the full range of sale opportunities open to competitors. This Court previously held that Ninth Circuit law barred Plaintiffs' theory. The same analysis and conclusion applies here.

When Plaintiffs' complaint was last analyzed by this Court, the Court found that "Plaintiffs have failed to allege that, as a result of the exclusive dealing arrangements made by Gogo, there has been substantial foreclosure of competition in the relevant market" because the complaint contained no "allegations as to why airplanes that could be equipped should not be included in the full range of selling opportunities reasonably open to a competitor." The Court described the types of allegations Plaintiffs needed to make -- *e.g.,* substantial technology or financial barriers -- and then concluded that "[i]n the absence of such allegations, the Court agrees with Gogo that Plaintiffs cannot focus solely on planes that are actually equipped with internet access, and, as a result, Plaintiffs' allegation that Gogo dominates the market with respect to North American aircraft that are actually equipped to provide internet connectivity to passengers (85%) shows little." Consequently, the Court dismissed the complaint with leave amend.

Despite taking written discovery in the interim, Plaintiffs return without having made any of the amendments suggested by the Court. Instead, they have doubled down on their failed foreclosure theory. They continue to focus on the legally irrelevant fact that Gogo once supplied 85% of the actually equipped market and fail to explain yet again why, in an antitrust case involving a new technology and expanding market, the much larger number of unequipped aircraft should be disregarded in the relevant market and foreclosure analysis. Plaintiffs' only new

allegations are nothing more than excerpts from Gogo's agreements with certain airlines, which fail to address the pleading defects that doomed the prior complaints.

Plaintiffs' legal theories have stayed the same in each complaint and are not improving over time. The SAC should be dismissed with prejudice.

## BACKGROUND

### I. Facts

The new and competitive business of providing inflight Internet connectivity is producing compelling consumer benefits. Airline passengers now have access to a new service that did not exist just a few years ago. The SAC acknowledges Gogo's role in pioneering this innovation for consumers by alleging that "Gogo was the first inflight Internet connectivity provider to launch such service in the United States in August 2008." SAC at ¶ 85.

Gogo's service uses a land-based network of cellular towers that are pointed upwards to communicate with aircraft. *Id.* at ¶ 15. This technology is known as air-to-ground or "ATG" technology. *Id.* Gogo offers its services to consumers by contracting with airline partners, through so-called Connectivity Agreements.[1] The Connectivity Agreements generally have a 10-year term and allow airlines to terminate the agreement if (i) another company provides an alternate connectivity service that is a material improvement over Gogo's, such that failing to adopt such service would likely cause competitive harm to the airline, or (ii) the percentage of passengers using Gogo Connectivity on such airline's flights falls below certain negotiated thresholds. Abye Decl., Ex. B at 18.[2]

---

[1] Inflight connectivity is provided by arrangements between the service providers such as Row 44, ViaSat, and Gogo, and the airlines that want to offer connectivity within their aircraft fleet. Passengers who want to use the service connect directly with the service provider during flights through laptops, cell phones, and other WiFi-enabled devices. Because this service is new and has only recently been made available to consumers, only about 4.7% of passengers offered Gogo's service in 2010 and 2011 took advantage of it, and the take rate has only improved slightly, to 5.3%, for 2012. *See* Abye Decl., Ex. B at 11.

[2] As the Court has already concluded that the Gogo S-1 Registration Statement is "incorporated by reference into the complaint." MTD Order at 5. As such, all statements contained in the Registration Statement are assumed to be true for purposes of this motion to dismiss. *See Davis v. HSBC Bank*, 691 F.3d 1152, 1160 (9th Cir. 2012) ("Under the incorporation by reference doctrine in this Circuit, a court may look beyond the pleadings without converting the Rule 12(b)(6) motion into one for summary judgment. Specifically, courts may take into account documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the Plaintiff's pleading. <u>A court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6).</u>") (emphasis added) (internal citations and quotations omitted).

Since Gogo launched its service in August 2008, at least three powerful new competitors have entered the business of providing inflight Internet services using different technology. One new entrant is a company called Row 44. SAC at ¶ 16. Row 44 uses a competing technology based on satellites rather than an ATG network. *Id.* Row 44's satellite system allows it to provide continuous Internet connections across international boundaries and over oceans, while Gogo's ATG network relies on land-based towers. *Id* at ¶ 17. Two other new entrants are LiveTV and Panasonic, which also provide a satellite-based Internet service. *Id.* at ¶ 19; Abye Decl., Ex. B at 135.

The new entrants have been successful competitors. Row 44 has already won the business of providing Internet services on all the domestic flights of Southwest Airlines. SAC at ¶ 18. Notwithstanding unsuccessful litigation, Row 44 is taking over service to former Gogo partner AirTran Airways after Southwest Airlines acquired AirTran Airways. *See* Abye Decl. Ex. B at 64. ViaSat has already won the business of providing Internet service on JetBlue and plans to activate that service in 2013. *Id.* at ¶ 19. Additionally, three major U.S. airlines-- United Airlines, Southwest Airlines and JetBlue Airways -- have announced arrangements with Gogo competitors to provide connectivity on all or a significant portion of their fleets. Abye Decl. Ex. B at 109.

Gogo's competitors include not only Row 44, Panasonic, and LiveTV, but also Thales and OnAir, all of whom provide inflight connectivity via satellite rather than an ATG network. *Id.* at 135. The competing technologies offer airlines important distinctions and choices. An ATG service can be installed on an aircraft overnight, limiting the expense associated with taking planes out of service, and has a lighter weight for better fuel efficiency. *Id.* at 4-5. Satellite solutions, on the other hand, provide much wider coverage for flights traveling over oceans and internationally. *Id.* at 109-10.

As the result of strong competition among these many companies and competing technologies, Gogo has been compelled to improve its technology by developing its own satellite-based service and upgrading the ATG network with new cell towers and a next-generation platform known as ATG-4. *Id.* at 2, 116. Gogo has also warned potential investors that competition could subject it to downward pricing pressures and adversely affect growth and

profitability. *Id.* at 22-23. Indeed, the S-1 Registration statement informs investors that Gogo is not yet profitable and has sustained operating losses in every quarter since launching in 2008. *Id.* at 6, 38-39.

## II. Allegations and Procedural History

On October 4, 2012 plaintiff James Stewart[3] filed a putative class action in this Court (Dkt. No. 1) alleging violations of Sections 1 and 2 of the Sherman Act (15 U.S.C. §§ 1-2), the California Cartwright Act (Cal. Bus. & Prof. Code Section 16720, *et seq.*), and California's Unfair Competition Law (Cal. Bus. & Prof. Code Section 17200, *et seq.*). The gravamen of the complaint was that Gogo is improperly exercising its purported monopoly power by foreclosing competition in a significant portion of the market for inflight Internet connectivity in the U.S. through the use of exclusive dealing provisions in its agreements with airline partners.

On December 10, 2012, Gogo moved to dismiss the complaint for failure to state a claim. (Dkt. No. 16). In lieu of opposing Gogo's motion, on December 31, 2012 Plaintiffs filed their First Amended Class Action Complaint (the "FAC") (Dkt. No. 18) alleging the same causes of action, but containing some additional allegations. Gogo subsequently moved to dismiss the FAC on January 30, 2013 (Dkt. No. 25). Gogo argued that, among other things, Plaintiffs failed to adequately allege monopoly power or market foreclosure.

On April 10, 2013, this Court granted Gogo's motion with leave to amend (the "MTD Order" [Dkt. No. 37]). The Court found that Plaintiffs' allegation that Gogo had monopoly power because it had equipped 85% of North American aircraft failed to state a Sherman Act claim in light of the fact that the vast majority of aircraft in the relevant market had not yet been equipped. The Court, quoting *Omega Environmental, Inc. v. Gilbarco*, *Inc.*, 127 F.3d 1157, 1162 (9th Cir. 1997), held that when "defining the relevant market, a court must look at the 'full range of selling opportunities reasonably open to competitors, namely all the product and geographic sales they may readily compete for.'" MTD Order at 6 (internal punctuation omitted). The Court further found that the Plaintiffs had not made any allegations as to why airplanes that were not yet

---

[3] Plaintiffs Milne and Strazzullo joined the action when the First Amended Complaint was filed. *See* Dkt. No. 18.

equipped for inflight connectivity but could be equipped should not be included in the full range of selling opportunities reasonably open to a competitor, and the Court agreed with Gogo that Plaintiffs could not focus solely on planes that were already equipped with Internet access. *Id.* at 6-7. Thus, the Court concluded that the FAC "failed to allege that, as a result of the exclusive dealing arrangements made by Gogo, there has been substantial foreclosure of competition in the relevant market." *Id.* Because Plaintiffs' claims under California state law were predicated on the same conduct underlying the Sherman Act claims, the Court dismissed them as well. *Id.* at 8.

After dismissing the FAC, the Court allowed Plaintiffs to conduct limited discovery -- reviewing all of Gogo's connectivity agreements with its airline partners -- and file a Second Amended Complaint ("SAC"), which was done on August 30, 2013. *See* Dkt. No. 61. The SAC contains a number of new allegations derived from the Connectivity Agreements, namely that Gogo's agreements with airline partners cover the following aircraft:



Significantly, and notwithstanding the MTD Order, other than some statements about Frontier Airlines' aircraft not being able to accommodate inflight internet services (SAC at ¶ 50), the SAC does not contain any new allegations as to why airplanes that are not yet equipped for inflight connectivity should not be included in the full range of selling opportunities reasonably

---

[4] AirTran is in the process of disinstalling Gogo's equipment on its aircraft. Abye Decl. Ex. B at 64.

open to a competitor.  Nor does the SAC make allegations as to Gogo's market share within a relevant market containing the full range of selling opportunities reasonably open to a competitor.

## ARGUMENT

### I. The Sherman Act Claims Should Be Dismissed for Failure to Allege Market Foreclosure

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A plaintiff must provide "more than [the] unadorned, the-defendant-unlawfully-harmed-me-accusation." *Id.* A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (citations omitted); *see also Abbyy USA Software House, Inc. v. Nuance Commc'n Inc.*, No. C 08-01035 JSW, 2008 WL 4830740 at *1 (N.D. Cal. Nov. 6, 2008) (same and dismissing antitrust claims).  Pleading facts showing a plausible claim is particularly important in antitrust cases because, "[a]s the Ninth Circuit has explained, 'discovery in antitrust cases frequently causes substantial expenditures and gives the plaintiff the opportunity to extort large settlements even where he does not have much of a case.'" *MedioStream, Inc. v. Microsoft Corp.*, No. 869 F. Supp. 2d 1095, 1102 (N.D. Cal. 2012) (quoting *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008)).

In the context of an alleged Sherman Act violation involving exclusive dealing, courts have acknowledged that "[t]here are well-recognized economic benefits to exclusive dealing arrangements, including the enhancement of interbrand competition." *Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*, 592 F.3d 991, 996 (9th Cir. 2010) (quotations omitted); *see also E & L Consulting, Ltd. v. Doman Indus. Ltd.*, 472 F.3d 23, 30 (2d Cir. 2006) (noting that "exclusive distributorship arrangements are presumptively legal").  Therefore, an exclusive dealing arrangement potentially raises antitrust concerns only "if its effect is to

'foreclose competition in a substantial share of the line of commerce affected.'" *Allied*, 592 F.3d at 996 (quoting *Tampa Electric Co. v. Nashville Coal Co.*, 365 U.S. 320, 327 (1961)); *see also Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 45 (1984) abrogated by *Illinois Tool Works, Inc. v. Indep. Ink, Inc.*, 577 U.S. 28 (2006) ("Exclusive dealing is an unreasonable restraint on trade only when a significant fraction of buyers or sellers are frozen out of a market by the exclusive deal.") (O'Connor, J. concurring).  Consequently, as this Court has held, to state an antitrust claim based on exclusive dealing arrangements, "Plaintiff must allege more than simply the existence of an exclusive contract." *Abbyy*, 2008 WL 4830740 at *2; *see also Kingray, Inc. v. NBA, Inc.*, 188 F. Supp. 2d 1177, 1196-97 (S.D. Cal. 2002) (dismissing complaint where plaintiffs made only conclusory allegations that exclusive contracts were intended to harm competition).

The SAC, like its dismissed predecessor, fails to meet this standard.

### A. In Contravention of the Court's Guidance, the SAC Fails to Plead Facts Establishing Why Unequipped Aircraft Should Be Excluded from the Relevant Market

In dismissing the FAC, this Court rejected Plaintiffs' claim that Gogo controlled 85% of the relevant market on the grounds that Plaintiffs' relevant market theory did not take the full range of selling opportunities into consideration and improperly excluded unequipped aircraft without an adequate explanation.  MTD Order at 6.  The Court also instructed Plaintiffs as to what types of allegations needed to be added to the complaint to make it viable.  *Id*. at 7.  The Court wrote the following:

> In defining the relevant market, a court must look at the "full range of selling opportunities reasonably open to [competitors], namely all the product and geographic sales they may readily compete for." *Omega Envtl., Inc. v. Gilbarco, Inc*., 127 F.3d 1157, 1162 (9th Cir. 1997) (internal quotation marks omitted).  In the instant case, the selling opportunity is to the airlines, who then "distribute" the service to passengers on the planes.  While Plaintiffs claim that the Court should consider only those airplanes that the airlines have actually equipped with internet access, they have not made any allegations as to why airplanes that could be equipped should not be included in the full range of selling opportunities reasonably open to a competitor.  Plaintiffs do not allege, for example, that there are substantial technological or design barriers to installing a competitor's internet connectivity services on such planes, nor do they allege that there are substantial financial barriers which prevent competition for these planes.  In the absence of such allegations, the Court agrees with Gogo that Plaintiffs cannot focus solely on planes that are actually equipped with internet access, and, as a result, Plaintiffs' allegation that Gogo dominates the market with respect to North American aircraft that are actually equipped to provide internet connectivity to passengers (85%)

shows little.  *See* FAC ¶¶ 11, 20.  Thus, Plaintiffs have failed to allege that, as a result of the exclusive dealing arrangements made by Gogo, there has been substantial foreclosure of competition in the relevant market, and, accordingly, the Court dismisses Plaintiffs' Sherman Act claims.

Rather than amend their complaint to comply with the Court's prescription as to the types of facts that needed to be pleaded, Plaintiffs continue to assert their flawed and rejected theory of the relevant market.  The SAC maintains that Gogo controls 85-90% percent of the relevant market (SAC ¶¶ 21-22) but, apart from an allegation that some unspecified number of Frontier Airlines aircraft are "unable to accommodate inflight internet service" (SAC at ¶ 50), ***adds no new allegations*** as to why aircraft that could be equipped should not be included in the full range of selling opportunities reasonably open to a competitor.  Plaintiffs' failure to fix this fatal pleading defect dooms the SAC to being dismissed with prejudice.  *See, e.g., Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (affirming dismissal with prejudice where "the district court gave Plaintiffs specific instructions on how to amend the complaint, and Plaintiffs did not comply").

**B.    The SAC Fails to Plead That Gogo Controls, Let Alone Foreclosed, the Required Substantial Portion of the Relevant Market**

Similarly, the new allegations that Plaintiffs do include in the SAC -- descriptions of some of the terms of Gogo's Connectivity Agreements and recitals of fleet names covered under these agreements -- do not get Plaintiffs any closer to alleging market foreclosure.  This is so because no matter how Plaintiffs' claims are analyzed, they do not show that Gogo controlled, let alone foreclosed, a substantial portion of the full range of selling opportunities reasonably open to competitors, which the Court has already found to include equipped and unequipped aircraft.  MTD Order at 7.  In other words, Plaintiffs fail to plead that Gogo controlled, and foreclosed, a percentage of the relevant market that is high enough to make Plaintiffs' monopolization claim actionable.  *See Image Technical Servs, Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1206 (9th Cir. 1997) ("Courts generally require a 65% market share to establish a prima facie case of market power."); *Twin City Sportservice, Inc. v. Charles O. Finley & Co.*, 512 F.2d 1264, 1274 (9th Cir. 1975) ("while 90% of the market 'is enough to constitute a monopoly; it is doubtful whether sixty or sixty-four per cent would be enough; and certainly thirty-three per cent is not.'") (quoting

*United States v. Aluminum Co. of Am.*, 148 F.2d 416, 424 (2d Cir. 1945)); *B & H Med., L.L.C. v. ABP Admin., Inc.*, 526 F.3d 257, 266 (6th Cir. 2008) ("Courts routinely observe that 'foreclosure levels are unlikely to be of concern where they are less than 30 or 40 percent.'") (quoting *Stop & Shop Supermarket Co. v. Blue Cross & Blue Shield of R.I.*, 373 F.3d 57, 68 (1st Cir. 2004)); *see also Jefferson Parish*, 466 U.S. at 46-47 (30% foreclosure not actionable because "[p]lainly . . . the arrangement forecloses only a small fraction of the [relevant] markets"); *Omega*, 127 F.3d at 1162-63 (foreclosure of 38% of market inadequate to support plaintiff's antitrust claim); *Colonial Med. Grp., Inc. v. Catholic Healthcare W.*, No. C-09-2192 MMC, 2010 WL 2108123, at *5 (N.D. Cal. May 25, 2010) *aff'd sub nom. Colonial Med. Grp., Inc. v. Catholic Health Care W.*, 444 F. App'x 937 (9th Cir. 2011) (same).

Accordingly, the SAC should be dismissed for failure to allege that Gogo had adequate market share to have made substantial market foreclosure even possible. *See, e.g., PNY Technologies, Inc. v. Sandisk Corp.*, No. C-11-4689 YGR, 2012 WL 1380271, at *9 (N.D. Cal. April 20, 2012) (dismissing Sherman Act claim stating "courts require a 65% market share to establish a *prima facie* showing of monopolistic market power . . . PNY's Complaint in its current form at best articulates only a 40% share . . . Accordingly, PNY has failed to plead sufficient facts supporting an allegation of monopoly power") (citations omitted); *POURfect Prods.*, No. CV-09-2660, 2010 WL 1769413, at *2 (D. Ariz. May 3, 2010) (dismissing Sherman Act Section 2 claim for, among other things, failure to plead monopoly power by not adequately pleading "facts showing that the defendant owns a dominant share of the market" notwithstanding "conclusory allegation" that defendant "possessed monopoly power in the relevant market").

**C.      Gogo's Agreements Do Not Even Foreclose Competition in Its Legally Insignificant Portion of The Relevant Market**

The SAC also fails to plead market foreclosure for the independent reason that record facts establish that Gogo's contracts do not even foreclose competition in the legally insubstantial portion of the market that they govern. Notwithstanding Plaintiffs' conclusory allegations, the reality of this new and dynamic market is that it is vibrant with competition.

First, Plaintiffs admit that during the period that Gogo allegedly foreclosed competition, several Gogo competitors entered the market and gained market share. SAC at ¶¶ 16, 19; Abye Decl. Ex. B at 109. These new entrants not only gained market share by executing agreements with airlines with which Gogo does not currently do business (*e.g*., Southwest Airlines and JetBlue Airways), but also took business that the SAC alleges was locked up by Gogo's exclusive dealing contracts. For example, the SAC alleges that "for the 10-year term of Gogo's contract with Air Tran, all of Air Tran's aircraft were bound to obtain their inflight internet service only from Gogo." SAC ¶ 24. Yet, the Air Tran business has now moved to Row 44. *See* Abye Decl. Ex. B at 64. Similarly, the SAC alleges that during the term of its agreement with Gogo (which is still in effect (*see* Abye Ex. B at 109), "no rival internet equipment provider could work with United on any part of United's fleet." SAC ¶ 46. Yet, in reality Gogo provides connectivity on only 13 United planes and United recently entered into an agreement with a Gogo competitor to provide connectivity on all or a significant portion of its fleets. SAC ¶ 13; Abye Decl. Ex. B at 109.

Second, the SAC fails to address the termination provisions in the in the Connectivity Agreements attached to the SAC. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. *See also* Abye Decl., Ex. B at 15 (Gogo's "contracts with airline partners from which we derive a majority of our [commercial airline] segment revenue permit each of these airline partners to terminate its contract with us if another company provides an alternative connectivity service that is a material improvement over Gogo Connectivity"); *id*. at 19 ("If our airline partners are not satisfied with our equipment or the Gogo service, they may reduce efforts to co-market the Gogo service to their passengers, which could result in lower passenger usage and reduced revenue, which could in turn give certain airlines the right to terminate their contracts with us.").

1  The ▇ termination provision completely undermines Plaintiffs' theory of this case,
2 which is based on the premise that Gogo's agreements "insulate[] it from price-constraining
3 competition" and that "[i]f Gogo was not insulated from competition . . . it would face the
4 prospect that if it attempted to raise or maintain prices for its inflight internet connectivity services
5 above a competitive level, it would lose business to competing inflight internet connectivity
6 providers that the airlines would be free to turn to but presently cannot as a result of the Gogo
7 exclusive contracts that are in effect." SAC ¶¶ 61-62. ▇▇▇▇▇▇
8 ▇▇▇▇▇▇
9 ▇▇▇▇▇▇
10 ▇▇▇▇▇▇
11 ▇▇▇▇

12  "The main antitrust objection to exclusive dealing is its tendency to foreclose existing
13 competitors or new entrants from competition in the covered portion of the relevant market during
14 the term of the agreement." *Omega*, 127 F.3d at 1162 (quotations omitted). Therefore, contracts
15 containing exclusive dealing provisions that can be terminated in the face of a materially better
16 offer, ▇▇▇▇, by definition do not foreclose the relevant market to competition.
17 *See Allied*, 592 F.3d at 997 ("The easy terminability of an exclusive dealing arrangement negates
18 substantially its potential to foreclose competition.") (quotation marks omitted); *Omega*, 127 F.3d
19 at 1162 (agreement did not foreclose a significant amount of the relevant market because, among
20 other reasons, it allowed for termination should a competing manufacturer offer "a better product
21 or a better deal"); *Balaklaw v. Lovell*, 14 F. 3d 793, 799 (2d Cir. 1994) (stating for a terminable
22 exclusive dealing contract that "[s]uch a situation may actually encourage, rather than discourage,
23 competition, because the incumbent and other, competing anesthesiology groups have a strong
24 incentive continually to improve the care and prices they offer in order to secure the exclusive
25 positions").

26  Consequently, the Court should dismiss the SAC's Sherman Act claims for failure to plead
27 market foreclosure. *See, e.g.,* MTD Order at 7 ("Thus, Plaintiffs have failed to allege that, as a
28 result of the exclusive dealing arrangements made by Gogo, there has been substantial foreclosure

of competition in the relevant market, and, accordingly, the Court dismisses Plaintiffs' Sherman Act claims.").

## II. Plaintiffs' Cartwright Act Claim Should Be Dismissed

Just as the Court did with the FAC's Cartwright Act claim, the Court should dismiss the SAC's Cartwright Act claim for failure to adequately allege a Sherman Act cause of action. *See* MTD Order at 8 ("[T]he Court concludes that the Cartwright Act claim, like the Sherman Act claims, must be dismissed because Plaintiffs have failed to make allegations as to why planes that could be equipped with internet access should not be considered part of the full range of selling opportunities reasonably open to competitors. In short, there is no allegation of substantial foreclosure of competition in the relevant market."); *see also Apple, Inc. v. Psystar Corp.*, 586 F. Supp. 2d 1190, 1203-04 (N.D. Cal. 2008) ("The Cartwright Act was patterned after Section 1 of the Sherman Act, and the pleading requirements under the two statutes are similar."); *In re Late Fee & Over-Limit Litig.*, 528 F. Supp. 2d 953, 965 (N.D. Cal. 2007) (dismissing Cartwright Act claims because plaintiff had failed to plead a viable Sherman Act claim) (citing *Cnty. of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1160 (9th Cir. 2001)).

The Cartwright Act claim is also defective for the independent reason that the SAC only alleges unilateral conduct, which is not actionable under the Cartwright Act. *See, e.g., Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1478 (9th Cir. 1986) opinion modified on denial of reh'g, 810 F.2d 1517 (9th Cir. 1987) (the Cartwright Act "does not address *unilateral* conduct"). Accordingly, the Court should also dismiss the Cartwright Act claim for failure to allege a combination. *See id.* (affirming dismissal of Cartwright Act claim, stating "[t]his claim is not cognizable under the Cartwright Act, for it fails to allege any combination"); *see also, e.g., Garon v. eBay, Inc.*, No. C 10-05737 JW, 2011 WL 6329089, at *6 (N.D. Cal. Nov. 30, 2011) ("Because Plaintiffs have not alleged that Defendant collaborated with another interest in restraint of trade, they have not alleged a violation of the Cartwright Act."); *Psystar*, 586 F. Supp. 2d at 1203-04 ("[Among other failures] the counterclaim alleges only unilateral anticompetitive conduct. The Cartwright Act claim, therefore, must be dismissed.").

### III.     Plaintiffs' UCL Claim Should Be Dismissed

"Under California law, if the same conduct is alleged to be both an antitrust violation and an unfair business act or practice for the same reason, then the determination that the conduct is not an unreasonable restraint of trade necessarily implies that the conduct is not unfair toward consumers." *In re Apple iPod iTunes Antitrust Litig.*, 796 F. Supp. 2d 1137, 1147 (N.D. Cal. 2011) (quotations omitted); *Psystar*, 586 F. Supp. 2d at 1204 (same). Accordingly, the Court should dismiss Plaintiffs' claim under the California Unfair Competition Law. *See e.g.,* MTD Order at 8 ("Because the Court is dismissing both the Sherman Act and Cartwright Act claims, Plaintiffs' assertion that Gogo acted unlawfully in violation of § 17200 must also fail.").

### CONCLUSION

The Court should dismiss the SAC with prejudice. Plaintiffs have already had three unsuccessful opportunities to state a claim. *See Salameh v. Tarsadia Hotel,* 726 F.3d 1124, 1133 (9th Cir. 2013) ("A district court's discretion to deny leave to amend is particularly broad where the plaintiff has previously amended.") (quotations omitted). Moreover, the facts in the SAC and documents incorporated therein affirmatively undermine Plaintiffs' claims and demonstrate that Plaintiffs will never be able to allege viable antitrust claims. *See Albrecht v. Lund*, 845 F.2d 193, 195 (9th Cir. 1988) ("[I]f a complaint is dismissed for failure to state a claim upon which relief can be granted, leave to amend may be denied . . . if amendment of the complaint would be futile. If the district court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency, then the dismissal without leave to amend is proper.") (internal citations and quotation marks omitted)); *see also, e.g., Applestein v. Medivation, Inc.*, 861 F. Supp. 2d 1030, 1044 (N.D. Cal. 2012) (dismissing complaint with prejudice because, among other reasons, the complaint contained factual "contradictions that cannot be undone by a further amendment").

DATED:  November 25, 2013                    SHEARMAN & STERLING LLP

                                                                  By:     /s/ *James Donato*
                                                                              James Donato

                                                                  Attorneys for Defendant GOGO INC.