United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES STEWART, *et al.*, | No. C-12-5164 EMC |
| Plaintiffs, | |
| v. | **ORDER DENYING DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT** |
| GOGO, INC., | |
| Defendant. | **(Docket No. 64)** |

Defendant Gogo, Inc. is a company that provides broadband internet access to passengers on commercial aircraft. *See* SAC ¶ 11. Plaintiffs James Stewart, Joel Milne, and Joseph Strazullo have filed a class action against Gogo, asserting that it has violated, *inter alia*, federal antitrust law because it has an unlawful monopoly in the "market for inflight internet access services on domestic commercial airline flights within the continental United States." SAC ¶ 12. Currently pending before the Court is Gogo's motion to dismiss the second amended complaint ("SAC").

Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby **DENIES** the motion to dismiss.

As before, the critical question for purposes of resolving the instant motion is whether Plaintiffs' complaint contains sufficient allegations that make an illegal exclusive dealing arrangement between Gogo and the airlines plausible. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (stating that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). An exclusive dealing

arrangement is a problem only where "its effect is to 'foreclose competition in a substantial share of the line of commerce affected.'" *Allied Orthopedic Appliances, Inc. v. Tyco Health Care Group LP*, 592 F.3d 991, 996 (9th Cir. 2010).

Here, Plaintiffs maintain that there is substantial market foreclosure because Gogo and a majority of the airlines providing commercial, domestic travel have entered into long-term, exclusive contracts which locked up either the airlines' entire fleet or near entire fleet of airplanes. *See* SAC ¶ 22 (alleging that "Gogo has entered into long-term exclusive agreements with most domestic carriers pursuant to which Gogo is the exclusive provider permitted to provide internet service for these carrier's [sic] entire or near entire fleet"). Plaintiffs specifically allege that Gogo possesses 85% of the relevant market share. This specific and factual allegation is backed by additional more specific factual allegations. Plaintiff allege facts about the numbers of aircraft and airlines covered by Gogo's exclusive dealing contracts. To support the allegations, Plaintiffs have also submitted copies of many of the contracts Gogo had with the airlines along with other evidence such as press releases, websites, etc.

Accordingly, Plaintiffs have done more than assert conclusory allegations of law or ultimate facts. *Cf. Allen v. Dairy Farmers of Am., Inc.*, 748 F. Supp. 2d 323, 340 (D. Vt. 2010) (stating that "[d]ismissals for insufficient pleading of market power are rare pre-discovery and are generally reserved for complaints bereft of factual allegations or which contain market share or market power allegations that are purely conclusory"); *see also Sun Microsys., Inc. v. Versata Enters.*, 630 F. Supp. 2d 395, 403 (D. Del. 2009) (stating that Versata did not allege facts pertaining to Sun's share of the relevant market, "instead relying on conclusory assertions that 'Sun's conduct has achieved, or has a dangerous probability of achieving monopoly power,' and that 'there is a dangerous probability of Sun achieving monopoly power' in the relevant market"). Hence, the issue is not specificity, but plausibility of Plaintiffs' claims.

Gogo argues that the alleged facts are erroneous and incomplete: that because Plaintiffs fail to explain the 85% figure (given there is only incomplete information about the numerator and no information about the denominator in reaching the 85% ratio), they have failed to allege a plausible claim for relief. However, the level of justification and factual detail Gogo demands exceeds that

2

required in the context of a Rule 12(b)(6) motion. These are matters appropriately left for discovery. If Gogo believes the 85% is erroneous, it can seek permission to file an early motion for summary adjudication and limit initial discovery accordingly. If it believes Plaintiffs had no good faith basis for their allegations, Gogo can move for relief under Rule 11. In short, there are other case management tools to address Gogo's concerns besides Rule 12.

To be sure, the Court is cognizant that there may be problems with some of Plaintiffs' allegations. Gogo never had a contract with Southwest and its contract with United contained terms indicating that the entirety (or near entirety) of United's fleet was not locked up for a significant period of time (contrary to Plaintiffs' representation). The Court is also cognizant of the fact that Southwest and United are two of the biggest providers of commercial, domestic airline travel – a point that neither party disputes. These facts legitimately put into question Plaintiffs' assertion that "Gogo possesses at least an 85% market share of all commercial aircraft servicing flights within the continental United States." SAC ¶ 22.

Nevertheless, even if the 85% figure is not correct, Plaintiffs allege with specificity other major airlines – including American, Delta, and US Air – whose fleets in their entirety or near entirety are or were locked up by Gogo's contract. Thus, it is plausible that even if not a 85% market share, Gogo has a substantial enough market share such that, together with the allegations in Plaintiffs' complaint that there are high barriers to entry,[1] a substantial share of the market has been foreclosed. *See Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1002-03 (9th Cir. 2008) (noting that "a 45-70% market share may be enough to establish a substantial share of the relevant market where it is accompanied by other factors like fragmentation of competition and high entry barriers").

The Court it is not persuaded by Gogo's argument that there is no substantial market foreclosure because it is relatively easy for airlines to get out of the contracts. Plaintiffs allege Gogo's contracts with the airlines largely provide that they may not be terminated except in limited

---

[1] *See e.g.*, SAC ¶ 53 (pointing to "the high cost of infrastructure required to build a network capable of offering inflight internet connectivity" and "restrictive legal and regulatory hurdles" (*e.g.*, "[f]or land-based systems, such as Gogo's ATG network, the [FCC] must provide and approved the required frequency spectrum for such transmissions to take place").

3

circumstances – *e.g.*, unless the airline would suffer competitive harm from not using a competitor's superior services. To the extent Gogo argues that agreements are in fact easy to terminate because AirTran recently terminated its agreement (and moved to competitor Row 44 after Southwest and AirTran merged), *see* Mot. at 5, it should be noted that, in an SEC filing, Gogo specifically stated: "[W]e believe that AirTran's connectivity agreement does *not* permit it to deinstall our equipment from these aircraft under these circumstances." Docket No. 26 (Abye Decl., Ex. B at 36) (emphasis added). In fact, Gogo initiated a lawsuit in Illinois state court, asking for a preliminary injunction to bar AirTran from installing Gogo's equipment in violation of their contract. *See* Docket No. 26 (Abye Decl., Ex. B at 36). While Gogo ultimately did not succeed, the fact that it took significant litigation and an attempted appeal to resolve the matter (*see* Docket No. 66 (Abye Decl., Ex. B at 64)), suggests the agreements are not easily terminated. In any event, for purposes of Rule 12(b)(6), Plaintiffs have sufficiently alleged a plausible claim that the contracts are not easily terminable.

Accordingly, the Court concludes that Plaintiffs have alleged plausible antitrust claims for purposes of Rule 12(b)(6) and denies Gogo's motion to dismiss. Gogo shall respond to the operative complaint within thirty (30) days from the date of this order.

This order disposes of Docket No. 64.

IT IS SO ORDERED.

Dated: January 29, 2014

_____
EDWARD M. CHEN
United States District Judge